Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2013, 5:56 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**YVETTE M. LAPLANTE**
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

DEMARCO JOHNSON,              )
                                   )
    Appellant-Defendant,         )
                                   )
        vs.              )     No. 82A05-1303-CR-128
                                   )
STATE OF INDIANA,             )
                                   )
    Appellee-Plaintiff.           )

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1209-FC-1101

**July 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Demarco Johnson was convicted of class C felony Attempted Disarming a Law Enforcement Officer[1] and class D felony Theft[2] and was adjudicated a Habitual Offender.[3] He received an aggregate sentence of twelve years in prison. On appeal, Johnson presents the following restated issues for review:

1. Did the State present sufficient evidence to support the conviction for attempted disarming of a law enforcement officer?

2. Did the State present sufficient evidence to support the theft conviction?

3. Is Johnson's twelve-year sentence inappropriate in light of the nature of his offense and his character?

We affirm.

The facts favorable to the conviction are that in the early morning hours of September 12, 2012, Johnson and Andre Parson entered a Walgreens in Evansville, Indiana. The two men immediately took one cart and began walking the aisles "all over the store", taking things off the shelves and placing them in the child seat of the cart. *Transcript* at 12. This caught the attention of Craig Hasenfang, a store employee. Hasenfang eventually approached Johnson[4] in the dental aisle and asked if he was finding everything okay. When Johnson responded affirmatively, Hasenfang went to the front of the store to wait and give them an opportunity to make a purchase.

---

[1]  Ind. Code Ann. § 35-44.1-3-2 (West, Westlaw through June 29, 2013, excluding P.L. 205-2013).
[2]  Ind. Code Ann. § 35-43-4-2 (West, Westlaw through June 29, 2013, excluding P.L. 205-2013).
[3]  Ind. Code Ann. § 35-50-2-8 (West, Westlaw through June 29, 2013, excluding P.L. 205-2013).
[4]   In his appellate brief, Johnson claims that the men split up upon entering the store and Hasenfang approached only Parson. The record does not support this version of the facts.

At some point, Hasenfang noticed that Johnson was no longer in the store, so he approached Parson to inquire. Parson appeared to be on his way out of the store, and Hasenfang observed that only one item remained in the cart that the men had been using. Hasenfang questioned Parson and informed him to wait. Parson fled as Hasenfang called 911 and provided dispatch with a description of the men.

Shortly thereafter, Officer Kareem Neighbors observed two men on a scooter matching the description put out on dispatch. When Officer Neighbors activated his lights, the passenger, Parson, began throwing objects from the scooter as Johnson continued driving. Johnson eventually stopped, and as Parson got off the scooter, more items fell to the ground. These items were later identified as having been taken from the Walgreens store. Parson and Johnson were separated and then both placed under arrest.

Johnson was upset and agitated during the arrest. Officer Jarid Harris, who knew Johnson, tried to calm him down. Another officer, Jonathan Oakley, arrived and was asked to transport Johnson to jail. Officer Oakley placed the already handcuffed Johnson in the back of his squad car, which did not have a cage separating the front and back seats. As Officer Oakley began to drive away, Johnson declared that he was not going to jail and lunged toward the front part of the vehicle. Officer Oakley stopped the vehicle and went to the back passenger side door. Upon opening the door, Johnson lunged at the officer. Officer Oakley administered a drive stun, a localized surge of electricity, to Johnson's leg as Johnson attempted to kick him. The two ended up tussling in the back seat, so Officer Oakley administered another drive stun closer to Johnson's chest. Johnson then turned to his side

3

and attempted to grab the taser. Despite being handcuffed, Johnson managed to grab hold with one hand. Officer Oakley continued to struggle with Johnson and yelled for him to let go. By this point Officer Harris had become aware of the struggle and ran to Oakley's aid. When Officer Oakley tased Johnson a third time and placed his body weight on him, Johnson finally said, "I'm done." *Transcript* at 71. The officers called for a police wagon to take Johnson to jail.

On September 13, 2012, the State charged Johnson with class C felony disarming a law enforcement officer (Count 1), class D felony resisting law enforcement (Count 2),[5] and class D felony theft (Count 3). The State also alleged that Johnson was a habitual offender. The jury trial took place on February 4, 2013, with the jury finding Johnson guilty of an included offense – attempt – of Count 1, not guilty of Count 2, and guilty of Count 3. Johnson subsequently admitted the propriety of the habitual offender enhancement. At the sentencing hearing on March 6, the trial court sentenced Johnson to six years on Count 1, enhanced by six years for being a habitual offender. Johnson also received, on Count 3, a two-year, concurrent sentence. Johnson now appeals.

1.

Johnson challenges the sufficiency of the evidence supporting his conviction for attempted disarming of a law enforcement officer. In this regard, Johnson contends that Officer Oakley's testimony should be disregarded as incredibly dubious.

---

[5] Count 2 alleged that Johnson resisted Officer Harris, who injured himself while attempting to come to Officer Oakley's aid.

4

Our standard of review for challenges to the sufficiency of the evidence is well settled.

> When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. *Henley v. State,* 881 N.E.2d 639, 652 (Ind. 2008). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." *Id.* We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. *Id.*

*Bailey v. State,* 907 N.E.2d 1003, 1005 (Ind. 2009). Johnson attempts to avoid this stringent standard of review by alleging incredible dubiosity of the officer's testimony.

The incredible dubiosity rule allows appellate courts to impinge upon a jury's function to judge the credibility of a witness. *Fajardo v. State*, 859 N.E.2d 1201 (Ind. 2007). Pursuant to this rule, "[i]f a sole witness presents incredibly dubious or inherently improbable evidence such that no reasonable person could believe it and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed." *Holeton v. State*, 853 N.E.2d 539, 541 (Ind. Ct. App. 2006). Application of this rule, however, is rare. *Fajardo v. State*, 859 N.E.2d 1201.

The incredible dubiosity rule does not apply in this case because Officer Oakley was not the sole witness with respect to the attempted disarmament charge. Officer Harris testified that he observed a struggle going on between Oakley and Johnson in the back of Oakley's police vehicle. As Harris ran to assist, he heard Oakley urgently say "something to the effect of let go" as Oakley tussled with Johnson. *Transcript* at 47. This evidence at least partially corroborates Officer Oakley's testimony. We reject Johnson's invitation to judge Officer Oakley's credibility and to reweigh the evidence. Sufficient evidence supports this

5

conviction.

2.

Johnson also argues that his theft conviction was not supported by sufficient evidence. He contends that the State presented no evidence that he personally took any merchandise from Walgreens or that he knew Parson was taking said items.

In order to convict Johnson of theft, the State was required to prove that he "knowingly or intentionally exert[ed] unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use". I.C. § 35-43-4-2. To convict Johnson as an accomplice, the State was required to prove that he knowingly or intentionally aided, induced, or caused Parson to commit theft. *See* Ind. Code Ann. § 35-41-2-4 (West, Westlaw through June 29, 2013, excluding P.L. 205-2013).

> It is well established that a person who aids another in committing a crime is just as guilty as the actual perpetrator. To be convicted as an accomplice, it is not necessary for a defendant to have participated in every element of the crime. While mere presence at the scene of the crime is insufficient to establish accomplice liability, presence may be considered along with the defendant's relation to the one engaged in the crime and the defendant's actions before, during, and after the commission of the crime.

*Green v. State*, 937 N.E.2d 923, 927 (Ind. Ct. App. 2010) (citations omitted), *trans. denied*.

Here, the evidence establishes that in the early morning hours on a weekday, Johnson and Parson entered the store together and began walking throughout the aisles placing various items in a shopping cart. Based on his experience, the store employee felt their behavior was suspicious and he approached the men before returning to the front of the store. Johnson eventually left the store without making a purchase, and Parson followed suit

6

shortly thereafter. The employee noticed that most of the items the men had placed in the cart were now gone, and he unsuccessfully attempted to stop Parson on his way out of the store. Johnson then drove Parson away from the store on a scooter. Thereafter, when Officer Neighbors attempted to initiate a traffic stop, Johnson continued to drive for some time while Parson threw stolen objects from the scooter.

The totality of the evidence supports a reasonable inference that Johnson and Parson were acting in concert and that Johnson knowingly or intentionally aided Parson in committing the theft. We refuse to reconsider the jury's reasonable determination in this regard.

3.

Finally, Johnson challenges the twelve-year sentence imposed for attempted disarming of a law enforcement officer. He claims that his sentence is inappropriate in light of his character and the nature of the offense.

Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State,* 895 N.E.2d 1219 (Ind. 2008). Per Indiana Appellate Rule 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied.* "[S]entencing is principally a discretionary function in which the trial court's judgment should receive considerable deference."

*Cardwell v. State*, 895 N.E.2d at 1223. Johnson bears the burden on appeal of persuading us that his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073 (Ind. 2006).

A class C felony is punishable by a term of imprisonment between two and eight years, with the advisory sentence being four years. I.C. § 35-50-2-6 (West, Westlaw through June 29, 2013, excluding P.L. 205-2013). The trial court imposed six years, which is two more than the advisory, based upon Johnson's extensive criminal history. The court then enhanced the sentence by six years based upon the habitual offender finding. For being a habitual offender, the trial court could have enhanced the sentence anywhere from four to twelve years. *See* I.C. § 35-50-2-8(h). In sum, Johnson faced a sentencing range of six to twenty years. The twelve year sentence is just below the midpoint of this range.

We agree with Johnson that the nature of his offense was not particularly egregious for its kind. Were we to consider this alone, the sentence imposed might be inappropriate. App. R. 7(B), however, requires that we also consider the character of the offender.

Johnson's character is that of a repeat offender. Disregarding the two felony convictions used to support the habitual offender finding, he has at least seven other prior felony convictions (resisting law enforcement, burglary, and theft) and ten misdemeanor convictions. At only twenty-eight years of age, Johnson has been incarcerated much of his adult life and has remained undeterred from his criminal behavior. In fact, the record indicates that Johnson had been released from prison in Kentucky within three months of the instant offense. Further, he had four other felony cases pending at the time of the instant sentencing hearing. The twelve-year sentence imposed by the trial court is not inappropriate

8

when both the offense and Johnson's character are considered.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.