**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 28 2014, 9:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANDREW B. ARNETT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| STEVE D. BOYD, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 73A01-1310-CR-438 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE SHELBY CIRCUIT COURT
The Honorable Charles D. O'Connor, Judge
Cause No. 73C01-1106-FA-9

**May 28, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Steve D. Boyd ("Boyd") was convicted of Dealing in Cocaine, as a Class A felony;[1] Dealing in Narcotics, as a Class B felony;[2] and Resisting Law Enforcement, as a Class A misdemeanor.[3] He now appeals, raising for our review the sole question of whether there was sufficient evidence to support his convictions for Dealing in Cocaine and Dealing in Narcotics.[4]

We affirm.

**Facts and Procedural History**

On June 9, 2011, Boyd arranged a sale of cocaine and heroin to Jason Plummer ("Plummer"), who was working as a confidential informant for the Shelby County Drug Task Force. Plummer informed Shelby County Sheriff's Department Detective Darren Chandler ("Detective Chandler") about the transaction. Detective Chandler and other police officers organized a controlled purchase of drugs, with Plummer to serve as the buyer.

On June 10, 2011, Boyd traveled from Indianapolis to Shelbyville in a white Chevrolet Impala driven at his request by his friend, Courtney Cunningham ("Cunningham"). Also with Boyd was Josh Nelson ("Nelson"). Boyd sat in the front passenger seat of the car, and Nelson sat in the back seat. Boyd repeatedly used Cunningham's cell phone, and throughout the duration of the drive from Indianapolis made phone calls and sent and

---

[1] Ind. Code §§ 35-48-4-1(a)(1) & (b)(1).

[2] I.C. § 35-48-4-1(a)(1).

[3] I.C. § 35-44.1-3-1(a).

[4] Boyd does not challenge his conviction for Resisting Law Enforcement.

2

received text messages. Many of the text messages were sent to Plummer, who was listed as "Power" in the cell phone's address book. (Tr. 62, 246; Ex. 8.)

Boyd initially planned to conduct the transaction in a casino in Shelbyville; he and Cunningham would remain in the car while Nelson went into the casino to meet Plummer and conduct the sale. At Detective Chandler's instruction, Plummer told Boyd that he could not get to the casino, and asked Boyd to meet him at a shopping center.

Boyd agreed to the change of location, and had Cunningham drive to the Belaire shopping center, also in Shelbyville. Police had planned to block Boyd's vehicle from leaving the parking lot after the transaction was concluded, but Boyd gave Plummer incorrect information that he was in a green Toyota truck. Cunningham parked the white Impala some distance away from Plummer's location, and Boyd gave Nelson the cocaine and heroin to sell to Plummer.

Nelson walked across the parking lot and approached Plummer, who was on the phone with Boyd at the time. Plummer and Nelson got into Plummer's truck; after a discussion about a change in the expected price of the transaction, during which Plummer was still on the phone with Boyd, Plummer gave Nelson $600, and Nelson gave Plummer the drugs. Nelson then returned to the car Cunningham was driving.

Plummer informed police that Nelson had gotten into the white Impala. The police team was not in a position to block the car's exit from the shopping center. Uniformed police officers pursued the vehicle, with Cunningham still driving, after it exited the parking lot.

Boyd told Cunningham to flee; Cunningham instead pulled into another parking lot. As the car entered the parking lot, Boyd told Nelson to get out of the car and try to scatter the cash. Nelson did so. Police arrived immediately and apprehended Nelson and Cunningham. Though police were able to handcuff him, Boyd refused to comply with instructions and struggled with several police officers, kicking and striking at officers and using his legs to avoid being placed into a police vehicle. Boyd was eventually subdued and transported to the Shelby County Jail.

Subsequent testing of the drugs Nelson delivered to Plummer revealed that Plummer had purchased 8.6 grams of crack cocaine and a small amount heroin.

On June 13, 2011, Boyd was charged with Dealing in Cocaine, Dealing in Heroin, and Resisting Law Enforcement. A jury trial was conducted from July 29 to 31, 2013. At the conclusion of the trial, Boyd was found guilty of Dealing in Cocaine, Dealing in Narcotics, and Resisting Law Enforcement, as charged.

On September 10, 2013, the trial court conducted a sentencing hearing. During the hearing, the court entered judgments of conviction against Boyd and sentenced him to thirty-seven years imprisonment for Dealing in Cocaine, seventeen years imprisonment for Dealing in Narcotics, and 365 days imprisonment for Resisting Law Enforcement, with the sentences run concurrently with one another, yielding an aggregate sentence of thirty-seven years.

This appeal ensued.

**Discussion and Decision**

Boyd contends that there was insufficient evidence to sustain his convictions for Dealing in Cocaine and Dealing in Narcotics. Our standard of review on challenges to the sufficiency of the evidence is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id. (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

To convict Boyd of Dealing in Cocaine, as a Class A felony, the State was required to prove beyond a reasonable doubt that Boyd knowingly or intentionally delivered more than three grams of cocaine, pure or adulterated, or aided, caused, or induced Cunningham or Nelson to do so. I.C. §§ 35-48-4-1(a)(1) & (b)(1); App'x at 146. To convict Boyd of Dealing in Narcotics, as a Class B felony, the State was required to prove beyond a reasonable doubt that Boyd knowingly or intentionally delivered heroin, or aided, caused, or induced Cunningham or Nelson to do so. I.C. § 35-48-4-1; App'x at 146. I.C. §§ 35-48-4-1(a)(1); App'x at 146.

The State charged Boyd with accessory liability. "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that

5

offense," even if no prosecution has occurred or conviction has attached as to the other person. I.C. § 35-41-2-4. "In Indiana there is no distinction between the responsibility of a principal and an accomplice." Stokes v. State, 908 N.E.2d 295, 303 (Ind. Ct. App. 2009) (citing Wise v. State, 719 N.E.2d 1192, 1198 (Ind. 1999)), trans. denied. A defendant may be convicted as an accomplice where he merely had a tangential involvement in the crime. Green v. State, 937 N.E.2d 923, 929 (Ind. Ct. App. 2010) (citing Ajabu v. State, 693 N.E.2d 921, 937 (Ind. 1998)), trans. denied. In determining whether a defendant aided another in the commission of a crime, we consider the following factors: (1) presence of the defendant at the crime scene; (2) the defendant's companionship with another engaged in criminal activity; (3) whether the defendant failed to oppose commission of the crime; and (4) the defendant's conduct before, during, and after the occurrence of the crime. Woods v. State, 963 N.E.2d 632, 634 (Ind. Ct. App. 2012).

Here, Plummer testified that he had known Boyd by an alias, "Chief," for nearly six months before the controlled buy on June 10, 2011, and had personally purchased cocaine and heroin from Boyd on numerous occasions. (Tr. at 78.) Plummer further testified that he recognized Boyd's voice over the telephone, and was on the phone with Boyd while he and Nelson conducted the transaction.

Cunningham testified that Boyd asked her to drive him to Shelbyville so he could get money from someone and stated that Boyd used her cell phone throughout the trip to Shelbyville, including during the drug transaction. Cunningham denied that Nelson used the phone at all, stated that both she and Boyd added contacts to the cell phone's address book,

6

and said that the sole cell phone retrieved from the white Impala was her phone. Cunningham testified that Boyd used that phone throughout the events of June 10, 2011.

Cunningham also stated that Boyd handed Nelson the drugs to sell to Plummer, and that upon returning to the car, Nelson handed over to Boyd the money he had received from Plummer. Once the police pursuit began, Cunningham said, Boyd tossed the money back to Nelson and told Nelson to get out of the car and scatter the cash obtained from the sale. Cunningham further stated that after the three had been arrested, Boyd told Nelson to say that he, and not Boyd, had organized the entire transaction. Boyd's rationale was that Nelson apparently had no prior offenses, and thus would be treated more leniently if convicted of a crime.

Parts of this testimony were corroborated by Shelbyville Police Detective Mike Polston ("Detective Polston"), who testified that after Boyd, Cunningham, and Nelson arrived in jail, Boyd would yell at his companions to stay quiet and not tell police anything. Detective Polston also testified that he monitored calls from Boyd to other individuals, and on one call Boyd stated that an individual named "Power" had been involved with his arrest. The name "Power" was in the cell phone contacts database, and was associated with the phone number for Plummer's cell phone. (Tr. at 62, 246; Ex. 8.)

Further, during the arrest, a police narcotics dog alerted at the front passenger door where Boyd had been sitting. A plastic bag with cut-off corners was in the pocket of the door. Shelbyville Police Officer Louie Koch, the canine handler, and Detective Chandler both testified that, in their experience and training, such bags were used to package narcotics

7

for sale. Detective Chandler testified that the drugs obtained from the controlled buy that day were packaged using corners cut from the same kind of plastic bag.

Boyd argues that Nelson presented a more credible alternative account than that of Plummer and Cunningham, whom he argues were not credible witnesses because they received lenient treatment from the State for their own offenses. These arguments are express invitations for this Court to reweigh evidence and reassess credibility; we will not do so. There was sufficient evidence to support the verdict, and we accordingly affirm the judgment.

Affirmed.

KIRSCH, J., and MAY, J., concur.