## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2015, 8:04 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

John T. Wilson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Richard C. Webster
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Tamarius T. Jennings, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | December 29, 2015 <br><br> Court of Appeals Case No. <br> 48A04-1503-CR-122 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable Thomas Newman, Jr., Judge <br><br> Trial Court Cause No. <br> 48C03-1410-FB-1766 |

**Crone, Judge.**

# Case Summary

[1] Tamarius T. Jennings appeals his convictions, following a jury trial, for two counts of class B felony aiding, inducing, or causing armed robbery. The sole issue presented for our review is whether the State presented sufficient evidence to support the convictions. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict indicate that on February 19, 2014, Jennings, his neighbor Samantha Cooper, and her boyfriend Jason Shaw planned to rob Leroy Smith. Cooper knew Smith and believed that he had a large amount of money. The group planned that Cooper would call Smith and ask him to hang out, and then Jennings and Shaw would come later to commit the robbery. Cooper called Smith and left to go to his house. Jennings told Shaw that he could obtain a gun and then he and Shaw went to Jennings's house to make plans on how they would commit the robbery.

[3] When Cooper arrived at Smith's house, Smith, Kaleb Kemper, and Smith's son Joseph were present; however, Joseph had gone to bed before Cooper arrived. Kemper thought that Cooper was acting "very sketchy." Tr. at 263. Cooper partied with Smith and Kemper a little and then began going into the bathroom to text Jennings. Cooper advised Jennings about how many people were present at Smith's and whether the people knew Jennings or Shaw. Cooper told Jennings to come to Smith's and to wear a mask. Jennings and Shaw left Jennings's house and went to a nearby home. Jennings entered the home while

Shaw waited outside. Jennings came out a few minutes later carrying a sawed-off rifle and a black plastic bag. Jennings texted Cooper to tell her that they were on their way to Smith's house. Cooper told Smith that she needed to step outside the house to take a call. She did not lock the door when she returned inside. Jennings and Shaw walked to Smith's house carrying the rifle in the plastic bag. They decided that Shaw would enter Smith's residence and commit the robbery while Jennings stayed out front to act as a lookout.

[4] When the pair reached Smith's house, Shaw entered the front door with the rifle and the bag, leaving the door open. Jennings stood on the sidewalk in front of the house. Shaw ordered Smith and Kemper to get on the ground and to put their money, cell phones, and property in the bag. He told them that he would blow their heads off if they failed to comply. As they were kneeling on the floor, Shaw and Kemper could see Jennings standing on the sidewalk.

[5] Shaw became distracted at some point as he spoke to Jennings through the open door. Kemper seized the opportunity to jump up and hit Shaw, knocking him through the front door. Kemper and Shaw tussled, and Kemper took the rifle from Shaw. Smith then began hitting Shaw before Shaw took off running, leaving the black plastic bag and the rifle behind. Jennings acted like he was trying to help and began to walk inside Smith's house. Kemper, who believed that both Jennings and Cooper were involved in the robbery, shoved both of them out the front door. Jennings and Cooper walked away together.

[6] Anderson police officers responded to the scene and began investigating the robbery. They encountered several witnesses who had information connecting Shaw and Jennings to the robbery. One of those witnesses, Autumn Jones, informed officers that, shortly after the robberies, she was stopped at a stoplight when Jennings and Shaw, whose face was beaten and bleeding, jumped into the backseat of her car. Jennings explained to Jones that Shaw had been involved in a bar fight. Jones told officers that she drove Jennings and Shaw to a house and dropped them off. Because Jones had Jennings's cell phone number, Jones texted Jennings at the direction of the officers to meet her at a McDonald's. When Jennings arrived at the McDonald's, officers arrested him. After his arrest, Jennings's text messages with Cooper regarding the planning and commission of the robbery were extracted from his cell phone. In addition, Jennings's fingerprint was recovered from the black plastic bag used in the robbery.

[7] The State charged Jennings with two counts of class B felony aiding, inducing, or causing armed robbery.[1] A trial was held and the jury found Jennings guilty as charged. The trial court imposed concurrent six-year sentences on each count. This appeal followed.

---

[1] Count I charged Jennings with aiding, inducing, or causing the armed robbery of Leroy Smith. Count II charged Jennings with aiding, inducing, or causing the armed robbery of Kaleb Kemper.

# Discussion and Decision

[8] Jennings challenges the sufficiency of the evidence to support his convictions. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn therefrom that support the verdict and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb the conviction. *Id*. at 500.

[9] To prove that Jennings committed class B felony aiding, inducing, or causing armed robbery, the State was required to prove that he knowingly or intentionally aided, induced, or caused Shaw to commit armed robbery. Ind. Code § 35-41-2-4. The version of Indiana Code Section 35-42-5-1 in effect at the time of the offenses provided that "[a] person who knowingly or intentionally takes property from another person: (1) by using or threatening the use of force on any person; or (2) by putting any person in fear; commits robbery as a Class C felony." The offense is a class B felony if it is committed while armed with a deadly weapon. Ind. Code § 35-42-5-1.

[10] "It is well established that a person who aids another in committing a crime is just as guilty as the actual perpetrator." *Green v. State*, 937 N.E.2d 923, 927 (Ind. Ct. App. 2010), *trans. denied* (2011). To be convicted as an accomplice, it is not

necessary that the defendant participated in every element of the crime. *Id*. While mere presence at the scene of a crime is insufficient to make one an accomplice, presence may be considered along with the defendant's relation to the person engaged in the crime and the defendant's actions before, during, and after the commission of the crime. *Id*.

Here, Shaw and Cooper both testified that Jennings actively participated in the planning of the robberies. He obtained the deadly weapon and black plastic bag used to commit the crimes, and he stood as a lookout during the crimes. Text messages between Cooper and Jennings, fingerprint evidence, and Jennings's behavior and companionship with Cooper and Shaw before and after the crimes further establishes his planning and participation in the crimes.

Jennings's sole assertion is that the testimony of Shaw and Cooper was incredibly dubious and should be disregarded. The incredible dubiosity rule is applied only in limited circumstances and "allows the Court to impinge upon a jury's responsibility to judge the credibility of the witnesses only when confronted with inherently improbable testimony." *Moore v. State*, 27 N.E.3d 749, 754 (Ind. 2015) (citation and quotation marks omitted). Application of the rule requires that there be: (1) a sole testifying witness; (2) testimony that is inherently contradictory, equivocal, or the result of coercion; and (3) complete absence of circumstantial evidence. *Id*. Here, the testimony of multiple witnesses as well as the presence of circumstantial evidence precludes application of the incredible dubiosity rule, and our analysis of Jennings's assertion ends. Accordingly, we decline Jennings's improper invitation for us

to reweigh the evidence and reassess witness credibility in his favor. The State presented sufficient evidence to sustain the convictions.

[13] Affirmed.

Vaidik, C.J., and Bailey, J., concur.