**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**SCOTT L. BARNHART**
Keffer Barnhart LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LYUBOV GORE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| GIAVONNI MONTEZ WICKWARE, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No.  82A05-1402-CR-73 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable David D. Kiely, Judge
The Honorable Kelli E. Fink, Magistrate
Cause No. 82C01-1210-FA-1353

**September 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Giavonni Montez Wickware ("Wickware") was convicted after a jury trial of Burglary Resulting in Bodily Injury, as a Class A felony,[1] and Theft, as a Class D felony.[2] He was also found to be a Habitual Offender.[3] After trial, Wickware was sentenced to an aggregate term of imprisonment of seventy years. He now appeals.

We affirm in part, reverse in part, and remand.

**Issues**

Wickware raises three issues for our review. We restate these as:

I. Whether there was sufficient evidence to support Wickware's convictions for Burglary and Theft;

II. Whether the trial court abused its discretion in finding aggravating circumstances when it sentenced Wickware; and

III. Whether Wickware's sentence is inappropriate.

**Facts and Procedural History**

In the early morning hours of October 26, 2012, Wickware met at the Evansville apartment of Shelley Osborne ("Osborne") with several others, including Patrick Thomas ("Thomas"), Daishar Compton ("Daishar"), Keenan Compton ("Keenan"), and Nicholas Cox ("Cox"). Osborne had told the men that she knew where to obtain several pounds of

---

[1] Ind. Code § 35-43-2-1(2) (West 2013). All substantive provisions of Indiana criminal law refer to the version of the Indiana Code in effect at the time of trial and sentencing.

[2] I.C. § 35-43-4-2(a).

[3] I.C. § 35-50-2-8.

marijuana and $10,000 in cash, and the men met in order to carry out a robbery at a location that Osborne had identified. Daishar provided two shotguns and a silver .380 pistol.

Around 1:00 a.m., Thomas, Daishar, and Cox traveled in Cox's car to a house on South Lombard Avenue in Evansville. Each man wore a mask, bandana, or other item to disguise his face. Wickware arrived separately after the other three men.

Once there, Thomas, Daishar, and Cox entered the home through an unlocked back door. S.W. was awoken by one of the men armed with a shotgun, was forced to lie on the ground, and her hands and feet were bound with shoelaces.

Another of the men was armed with the silver .380 pistol. That individual woke S.W.'s son, J.J.M., and directed J.J.M. to leave his room and enter his mother's room. Once in S.W.'s room, J.J.M. attempted to wrest a shotgun from one of the men. A fight ensued, and J.J.M. was shoved into a dresser and pistol-whipped. The men then forced J.J.M. to lie down on top of S.W.'s legs. J.J.M. was hog-tied with a pair of shoelaces. As a result of his attempt to disarm one of the men, J.J.M. received injuries to his back, face, and head.

Three men—one armed with a pistol, one with a shotgun—remained in S.W.'s room and demanded to know where "Matt" was, where the money was, and where the marijuana was. One of the men repeatedly suggested that they shoot S.W. and J.J.M. S.W. could hear a fourth individual ransacking the home, dumping out drawers and breaking belongings.

Eventually, the men covered S.W. and J.J.M. with a comforter from S.W.'s bed. After a few more minutes, the men left the home. Soon after, J.J.M. freed his hands, untied himself, and helped untie S.W. S.W. called 911 at around 2:00 a.m.

3

Evansville Police responded to the 911 call. Among those responding was Evansville Police Officer Jared LaFollette ("Officer LaFollette"), who was providing off-duty security services at a nearby apartment complex, The Arbors, the northwest corner of which sat at the intersection of South Lombard Avenue and Monroe Avenue. Officer LaFollette was driving west on Monroe Avenue and saw four men running along Monroe Avenue, moving away from the home on South Lombard Avenue. He accelerated along the street, and all but one of the men ran south from Monroe Avenue and into The Arbors apartment complex.

Officer LaFollette exited his car and apprehended the remaining man, who was later identified as Thomas. Other officers patrolled The Arbors; Officer Doug Kemmerer ("Officer Kemmerer") saw three men near a dumpster in the complex, and saw the lead man dispose of two long objects that appeared to be weapons. The three men then ran south from the dumpster.

Officer Zach Elfreich ("Officer Elfreich"), another of the responding officers, located two additional men. Wickware was one of them; Officer Elfreich found Wickware sitting on a concrete back stoop of an apartment, sweating and out of breath. Wickware did not reside at the apartment, and the occupants of the apartment did not know Wickware. After Wickware was apprehended, Officer Elfreich found Daishar hiding between a privacy fence and an air conditioning unit.

Crime scene detectives and other responding police officers searched The Arbors apartment complex. They found numerous items from the South Lombard home scattered from the point at which Officer LaFollette first spotted Thomas, Wickware, and the other

4

men, including several dolls owned by S.W. and the various components of a video game console. Two shotguns were recovered from the dumpster where Officer Kemmerer saw three of the men stop and dispose of items. A 911 call later on October 26, 2012, alerted police to the presence of a handgun that matched the description of the .380 pistol used to hold J.J.M. at gunpoint. Various other items were found at The Arbors, including black hoodies and socks and shirt sleeves with holes cut in them where an individual's eyes could see through the item if worn as a mask.

On October 30, 2012, Wickware was charged with Burglary Resulting in Bodily Injury; two counts of Criminal Confinement, as Class B felonies;[4] two counts of Armed Robbery, as Class B felonies;[5] and Theft. Wickware was also alleged to be a Habitual Offender.

A jury trial was conducted on December 9, 10, and 11, 2013, on the charges of Burglary Resulting in Bodily Injury, Criminal Confinement, Armed Robbery, and Theft. At the conclusion of the trial, the jury found Wickware guilty of Burglary Resulting in Bodily Injury and Theft. On December 30, 2013, a hearing was conducted on the Habitual Offender enhancement. On January 9, 2014, the court found Wickware to be a Habitual Offender.

A sentencing hearing was conducted on February 5, 2014. The trial court entered judgments of conviction against Wickware for Burglary Resulting in Bodily Injury and Theft, and adjudicated Wickware as a Habitual Offender. The court then sentenced Wickware to

---

[4] I.C. §§ 35-42-3-3(a) & (b)(2)(A).

[5] I.C. §§ 35-42-5-1(1).

forty years imprisonment for Burglary Resulting in Bodily Injury, enhanced by thirty years as a result of Wickware's Habitual Offender status; and two years imprisonment for Theft, enhanced by four years as a result of Wickware's Habitual Offender status. The court ran the enhanced sentence for Theft concurrent with the enhanced sentence for Burglary Resulting in Bodily Injury, yielding an aggregate term of imprisonment of seventy years.

This appeal ensued.

## Discussion and Decision

### Sufficiency of the Evidence

Wickware's first contention on appeal is that there was insufficient evidence to support the jury's verdicts that he committed Burglary Resulting in Bodily Injury and Theft.

Our standard of review in challenges to the sufficiency of evidence is well settled. We consider only the probative evidence and reasonable inferences supporting the verdict. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess the credibility of witnesses or reweigh evidence. Id. We will affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." Id. (quoting Jenkins v. State, 726 N.E.2d 268, 270 (Ind. 2000)). "The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict." Id. at 147 (quoting Pickens v. State, 751 N.E.2d 331, 334 (Ind. Ct. App. 2001)).

To obtain a conviction for Burglary Resulting in Bodily Injury, as charged, the State was required to prove beyond a reasonable doubt that Wickware broke and entered the building of S.W. and J.J.M. with the intent to commit theft therein, which resulted in bodily

6

injury to J.J.M. See I.C. § 35-43-2-1(2); App'x Vol. 1 at 26. To convict Wickware of Theft, as charged, the State was required to prove beyond a reasonable doubt that Wickware knowingly exerted unauthorized control over the property of S.W. or J.J.M. with the intent to deprive them of the value or use of that property, by taking and possessing property without S.W.'s or J.J.M.'s knowledge or consent. See I.C. 35-43-4-2(a); App'x Vol. 1 at 27.

Here, the jury was instructed regarding accessory liability as to Wickware. "A person who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense," even if no prosecution has occurred or conviction has attached as to the other person. I.C. § 35-41-2-4. "In Indiana there is no distinction between the responsibility of a principal and an accomplice." Stokes v. State, 908 N.E.2d 295, 303 (Ind. Ct. App. 2009) (citing Wise v. State, 719 N.E.2d 1192, 1198 (Ind. 1999)), trans. denied. A defendant may be convicted as an accomplice where he merely had a tangential involvement in the crime. Green v. State, 937 N.E.2d 923, 929 (Ind. Ct. App. 2010) (citing Ajabu v. State, 693 N.E.2d 921, 937 (Ind. 1998)), trans. denied. In determining whether a defendant aided another in the commission of a crime, we consider the following factors: (1) presence of the defendant at the crime scene; (2) the defendant's companionship with another engaged in criminal activity; (3) whether the defendant failed to oppose commission of the crime; and (4) the defendant's conduct before, during, and after the occurrence of the crime. Woods v. State, 963 N.E.2d 632, 634 (Ind. Ct. App. 2012).

Wickware contends there was insufficient evidence of his liability as an accessory. Our review of the record reveals that Thomas, who was among the men arrested as a result of

7

S.W.'s 911 call, testified that Wickware was present at Osborne's apartment and was among the men who planned to rob a home of marijuana and money. All of the men wore items to conceal their facial features. Thomas further testified that Wickware arrived separately from Thomas, Daishar, and Cox at the South Lombard Avenue home, but did not hold a weapon or harm anyone.

S.W. testified that there were four individuals in her home: three in the room with her and J.J.M., and a fourth was ransacking the other rooms in the house. J.J.M. testified that while he only saw two or three individuals, he could hear three or four individuals in the home. Both S.W. and J.J.M. testified that the men were wearing disguises.

Officer LaFollette testified that after dispatch radioed concerning S.W.'s 911 call, he saw several men running together as a group from the area of S.W.'s home on South Lombard Avenue. He was able to apprehend one of them, who was later identified as Thomas, and the other men fled into The Arbors apartment complex.

Officer Kammerer also responded to the 911 call. He testified that he observed three men dispose of the shotguns and flee on-foot through the apartment complex. Officer Elfreich, who was involved with the search for suspects in The Arbors, testified that he found Wickware and Daishar two apartments away from one another. Wickware was sweating and breathing heavily while seated on the back stoop of an apartment occupied by people he did not know. While Wickware was not wearing a black jacket or hoodie, Officer Elfreich testified that he found a discarded black hoodie nearby. Officer Elfreich further testified that he discovered Daishar two apartments away; Daishar was attempting to conceal himself from

8

Officer Elfreich. Finally, a search of the grounds at The Arbors revealed property taken from S.W.'s home scattered in the area of the men's flight from police.

Taken together, this is sufficient evidence from which a reasonable fact-finder could conclude that Wickware aided Thomas and the others in burglary and theft at S.W.'s home. To the extent Wickware argues that he was merely "at the right place at the wrong time," he asks that we reweigh evidence. (Appellant's Br. at 8.) We cannot to do so, see Drane, 867 N.E.2d at 146, and accordingly affirm the jury's verdicts.

### Habitual Offender Status

Wickware also challenges his sentence, raising two issues for our review. Before addressing these issues, we address sua sponte a matter relating to the trial court's enhancement of Wickware's sentences as a result of his habitual offender status.

Our supreme court has stated:

> We have repeatedly held that, when defendants are convicted of multiple offenses and found to be habitual offenders, trial courts must impose the resulting penalty enhancement upon only one of the convictions and must specify the conviction to be so enhanced. See, e.g., Chappel v. State, 591 N.E.2d 1011, 1012 (Ind. 1992). Failure to specify requires that we remand the cause to the trial court to correct the sentence as it regards the habitual offender status. Id. at 1016; Miller v. State, 563 N.E.2d 578, 584 (Ind. 1990).

McIntire v. State, 717 N.E.2d 96, 102 (Ind. 1999). The court went on to note, "The only time we have found remand for re-sentencing to be unnecessary is when we affirmed all convictions and the trial court ordered identical sentences to run concurrently." Id. at 102 n. 9.

This Court has addressed a situation analogous to the one now before us. In <u>Tipton v. State</u>, 981 N.E.2d 103 (Ind. Ct. App. 2012), <u>trans. denied</u>, we held that where the trial court failed to specify the conviction to which a habitual offender enhancement should attach, reversal was not warranted where the record made it clear that the length of the enhancement could only have attached to one of the convictions. <u>Id.</u> at 104 n.4.

Here, the trial court sentenced Wickware to forty years imprisonment for Burglary Resulting in Bodily Injury, enhanced by thirty years for his habitual offender status, resulting in a total term of imprisonment of seventy years. The court also sentenced Wickware to two years imprisonment for Theft. But the court also enhanced this sentence as a result of the habitual offender adjudication, adding four years imprisonment. The court ran the sentences concurrent with one another, yielding an aggregate sentence of seventy years.

Under the then-effective habitual offender statute, the maximum enhancement for Wickware's sentence for Theft, as a Class D felony, was 4 ½ years—three times the advisory sentence of 18 months. <u>See</u> I.C. § 35-50-2-7(a) (setting the sentencing range for a Class D felony); I.C. § 35-50-2-8(h) (setting the maximum sentencing enhancement for a habitual offender at the lesser of three times the advisory sentence of the underlying offense or thirty years). As in <u>Tipton</u>, the thirty-year enhancement in Wickware's case could only be a result of the enhancement of Wickware's sentence for Burglary Resulting in Bodily Injury, which carried Class A felony-level sentencing of twenty to fifty years imprisonment, an advisory term of imprisonment of thirty years, and a maximum habitual offender enhancement of

10

thirty years. See I.C. § 35-50-2-4 (setting the sentencing range for Class A felonies); I.C. § 35-50-2-8(h).

Because below we affirm the trial court's sentencing decision in all other respects, we remand this case to the trial court with instructions to vacate the habitual offender enhancement as to Wickware's sentence for Theft, as a Class D felony.

## Aggravating Circumstances

Wickware raises two issues related to his sentence. The first of these is whether the trial court abused its discretion when it entered an aggravated sentence against him, where the sentencing statement took into account facts related to offenses for which Wickware was found not guilty.

Sentencing decisions rest within the sound discretion of the trial court, and we review such decisions for an abuse of that discretion. Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218. Among the bases upon which an abuse of discretion may be found include finding aggravating factors to exist which are unsupported by the record, or when the trial court articulates reasons for imposing a sentence that are improper as a matter of law. Id. at 490-91. "Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." Id. at 491.

11

Here, Wickware contends that the trial court abused its discretion when it sentenced him because it relied on matters in the record, the associated facts of which did not result in a guilty finding from the jury. He draws our attention to this statement from the trial court:

> I think the evidence supported that the co-defendants and the defendant in this case would have realized that [the co-defendants had gone to the wrong home], and still these people, their home was ransacked, they were held, as a joint venture with all of the defendants, they were held with weapons, and I think the evidence was also that they were eventually tied up, and I find that also to be an aggravating factor.

(Tr. at 497.) Wickware contends that the trial court's use of facts concerning the criminal confinement of S.W. and J.J.M.—offenses for which Wickware was found not guilty by the jury—was an abuse of discretion.

Yet the trial court relied upon several factors in determining Wickware's sentences. After taking note of mitigating factors, the court took into account, at length, Wickware's prior criminal history. The court also noted that the purpose of the offenses was to steal money and drugs, and that Wickware and the others continued in their commission of various offenses after it became clear that they had entered the wrong home. Accordingly, we cannot conclude that the trial court's observation that "as a joint venture with all of the defendants, [S.W. and J.J.M.] were held with weapons, and … were eventually tied up" was so central to its determination of Wickware's sentence that without that finding it would have reached a different sentencing decision. We accordingly leave the trial court's finding of aggravating circumstances undisturbed.

12

<u>Inappropriateness</u>

We turn to Wickware's final contention on appeal, whether his sentence was inappropriate in light of the nature of his offenses and his character.

The authority granted to this Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. <u>Cardwell v. State</u>, 895 N.E.2d 1219, 1222-25 (Ind. 2008); <u>Serino v. State</u>, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. <u>Cardwell</u>, 895 N.E.2d at 1225.

Here, Wickware was convicted of Burglary Resulting in Bodily Injury, as a Class A felony, and Theft, as a Class D felony; he was also adjudicated to be a habitual offender. For a Class A felony, Wickware faced a sentencing range of twenty to fifty years, with an advisory term of thirty years; he was sentenced to forty years imprisonment. For a Class D felony, Wickware faced a sentencing range of six months to three years, with an advisory term of eighteen months; he was sentenced to two years imprisonment. As a result of Wickware's adjudication as a habitual offender, he faced a sentence enhancement of as little

as eighteen months (the minimum enhancement if the trial court had applied the habitual offender enhancement to Wickware's sentence for Theft) to thirty years as a result of application of the habitual offender enhancement to Wickware's sentence for Burglary Resulting in Bodily Injury. The trial court applied the maximum possible enhancement to the sentence for Burglary Resulting in Bodily Injury and ran the sentences for Theft and Burglary Resulting in Bodily Injury concurrent with one another, yielding an aggregate term of imprisonment of seventy years.

Looking to the nature of the offense, Wickware participated in planning the burglary of a residence in which he and the other men expected to find several pounds of marijuana and around $10,000 in drugs. The men eventually realized they had entered the wrong home, but did not discontinue their conduct; they ransacked the home searching for items of value, and soon afterward fled from police. In the process of committing the burglary, one of the men injured J.J.M., slamming him into a dresser and pistol-whipping him. All told, then, Wickware participated in a burglary looking for drugs and money, but instead harmed a family without any apparent involvement in criminal activity.

Nor does Wickware's character speak well of him. He lacks a high school education or GED. Wickware's pre-sentencing investigation report ("PSI") states that he admitted to daily marijuana use, as well as occasional use of cocaine and narcotic pain medications. The PSI also reports that Wickware had two prior adult felony adjudications, one for Robbery, the other for Theft; the conviction for Robbery was related to a case that arose three months after Wickware was released from his prison sentence for Theft. While the instant case was

pending, Wickware was charged in a separate cause with Battery Resulting in Serious Bodily Injury. Wickware also has six prior juvenile adjudications, five of which were for offenses that would be considered felonies if committed by an adult. Three of these involved acts that would constitute Theft, another involved acts that would constitute Burglary, and another involved conduct that would constitute Battery.

Having reviewed the matter, we cannot conclude that Wickware's aggregate seventy-year sentence was inappropriate. We accordingly affirm the trial court's decision in this respect.

**Conclusion**

There was sufficient evidence to support Wickware's convictions. While we remand to the trial court to vacate its enhancement of Wickware's sentence for Theft, we find no error in the trial court's sentencing statement, and conclude that Wickware's seventy-year aggregate sentence is not inappropriate. We accordingly affirm the convictions, reverse and remand with instructions to the trial court to vacate the erroneous enhancement of Wickware's sentence for Theft. We affirm the judgment in all other respects.

Affirmed in part, reversed in part, and remanded with instructions.

NAJAM, J., and PYLE, J., concur.