## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 15 2017, 9:07 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Charles W. Lahey
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Tyre Mark Bradbury,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 15, 2017

Court of Appeals Case No.
71A05-1606-CR-1280

Appeal from the St. Joseph
Superior Court.
The Honorable Elizabeth C.
Hurley, Judge.
Cause No. 71D08-1405-MR-5

**Shepard, Senior Judge**

[1] A jury found Tyre Mark Bradbury guilty of murder as an accessory and concluded he had participated in the crime as part of a criminal gang. The trial judge sentenced him to the minimum penalty for murder, forty-five years, and doubled it as required by the gang statute.

# Issues

Bradbury raises the following issues:

I.     Whether the trial court erred in admitting the recording of Bradbury's interrogation;

II.     Whether the court erred while instructing the jury;

III.     Whether there is sufficient evidence to sustain Bradbury's conviction for murder;

IV.     Whether there is sufficient evidence to sustain a sentence enhancement for participation in a criminal organization;

V.     Whether Bradbury should have been sentenced as a juvenile; and

VI.     Whether Bradbury's sentence is unconstitutional.

# Facts and Procedural History

On April 8, 2014, a fistfight broke out among several young men at a public park in South Bend. Fifteen-year-old Tyre Bradbury and another juvenile, L.B., participated in the fight on opposing sides. The next day, Bradbury and numerous companions, including Robert Griffin and juvenile T.B., returned to the park. Bradbury had obtained a handgun and a shotgun; he gave the handgun to Griffin and the shotgun to another companion. The group again encountered L.B., and, during a confrontation, Griffin and T.B. pulled out handguns and shot at L.B. multiple times. No one fired the shotgun. None of the shots hit L.B., but one of Griffin's bullets traveled 390 yards and struck two-year-old J.S. in the chest as he was playing with his sister in the front yard of his house. J.S. died from the gunshot.

[4] These dreadful events rightly led to multiple prosecutions. Griffin, who fired the shot that killed J.S. and was an adult at the time of the shooting, received a flat sixty years for murder. T.B., the other shooter, received a forty-year sentence with five years suspended for attempted murder. Bradbury's other companions, including Josh Hodge, Xavier Primm, M.B., D.W., and C.W., received sentences of ten years or less. The State argued that most of Bradbury's companions were also members of the gang, but only C.W. was convicted of the criminal organizations enhancement. M.B. and D.W. were also charged with the enhancement, but the enhancement was later dismissed as to them.

[5] As for Bradbury, the police arrested him on April 10, and an officer interrogated him with his mother present. The State charged Bradbury with murder as an accessory[1] and sought a sentencing enhancement for participation in a criminal organization.[2] The juvenile court waived jurisdiction and transferred the case to the St. Joseph Superior Court. In a bifurcated proceeding, the jury determined that Bradbury was guilty of murder and that he was subject to the criminal organizations enhancement. The court sentenced Bradbury to an aggregate of ninety years.

---

[1] Ind. Code §§ 35-42-1-1 (2013), 35-41-2-4 (1977).

[2] Ind. Code § 35-50-2-15 (2006).

# Discussion and Decision

## 1. Admitting the Recording of Interrogation

Bradbury argues the trial court should have granted his motion to suppress the recording of his interrogation, claiming his incriminating statements were coerced.[3] The issue is more appropriately framed as whether the court abused its discretion by admitting the recording. *Lanham v. State*, 937 N.E.2d 419 (Ind. Ct. App. 2010). Abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

When a defendant challenges the admissibility of his or her statement, the State must prove by a preponderance that the statement was voluntary. *Williams v. State*, 997 N.E.2d 1154 (Ind. Ct. App. 2013). On review, we look to the totality of the circumstances surrounding the giving of the statement, and our focus is whether the statement was free and voluntary, not induced by any violence, threats, promises, or other improper influences. *Id.* Among other factors, we consider the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental health. *Pruitt v. State*, 834 N.E.2d 90 (Ind. 2005). Coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. *Scalissi v. State*, 759 N.E.2d

---

[3] The State claims Bradbury has waived this issue for appellate review. Based on our review of the record, we disagree and consider the merits of Bradbury's claim.

618 (Ind. 2001). If there is substantial evidence to support the trial court's conclusion of voluntariness, we affirm. *Williams*, 997 N.E.2d at 1154.

[8] The police took fifteen-year-old Bradbury into custody on the morning of April 10, 2014, and Officer Brian Cook of the St. Joseph County Sheriff's Department questioned him at a police station. Bradbury had attended some high school and had no mental illnesses or cognitive disabilities. The interrogation occurred over three sessions that day.

[9] The first session lasted from 11:34 a.m. to 2:30 p.m., with several breaks of around ten minutes each. At the beginning, Officer Cook read the *Miranda* rights to Bradbury and his mother, who signed a form acknowledging same. The officer then left the room and turned off the recording to allow Bradbury and his mother to confer in private. When Officer Cook returned and reactivated the recorder, he re-read the form, and Bradbury's mother signed it again.

[10] Officer Cook then questioned Bradbury. Bradbury's mother repeatedly urged him to cooperate, asking him to name persons who were involved. Bradbury initially refused to provide details, saying Officer Cook "didn't know [s**t]." Ex. 30 at 11:51. After a break, Bradbury told the officer *he* had shot at L.B. using a chrome Taurus handgun. He said a person named "Ace" also shot at L.B. with a handgun. Bradbury further claimed he brought a shotgun to the park but threw it under some bushes, where he left it. During this discussion, Officer Cook expressed skepticism that Bradbury was one of the shooters, and

Bradbury's mother repeatedly urged him not to claim responsibility so as to protect someone else.

[11] Officer Cook brought Bradbury a meal at the end of the first session, saying he and his fellow officers wanted to go find the shotgun and "Ace." Almost four hours later, at 6:19 p.m., the questioning resumed. Officer Cook told Bradbury the shotgun was not where he said it would be. To the contrary, Officer Cook said an eyewitness saw someone matching the description of Bradbury and two of his companions carrying a shotgun as they entered a car and left the scene of the shooting. He also informed Bradbury that "Ace" was at work during the shooting. After Officer Cook confronted Bradbury about his lies, Bradbury laughed. Cook ended the session by telling Bradbury he was going to jail.

[12] The final session began at 6:52 p.m. after a thirty-minute break. Officer Cook stated for the record that Bradbury had asked to talk to him again. Cook re-read *Miranda* rights to Bradbury and his mother, she signed it, and then Officer Cook left the room and turned off the recording so Bradbury and his mother could talk privately. When Cook returned and reactivated the recording, Bradbury's mother signed the form again. Bradbury admitted he had lied about being one of the shooters, stating he was trying to be loyal to his friends and "was not thinking of the consequences." Ex. 30 at 19:05. Bradbury conceded one of his friends fired one handgun and another person he knew as "Josh" fired a second handgun. Officer Cook ended the session at 7:54 p.m.

Bradbury argues his statement was involuntary because, during the first session, Officer Cook stated that due to his young age, if Bradbury went to prison he was likely to be sexually assaulted. Although this type of remark to a minor suspect is not to be condoned, the recording shows that Bradbury laughed after Cook said it and further stated he would not give any names to Cook.

Further, Cook's comment was an isolated remark over the course of three sessions, with a lengthy break between the first and second. Bradbury did not cooperate with Cook immediately after he made the remark. Instead, Bradbury continued to lie about being one of the shooters in order to protect a friend, falsely claimed "Ace" was the other shooter, and falsely stated he left a shotgun at the park. He persisted in these statements through the end of the first session of questioning. Bradbury did not change his story until after Officer Cook confronted him with his lies, some five hours after Cook had warned him about sexual assault in prison. Further, before beginning the third session, Cook again advised Bradbury and his mother of his *Miranda* rights. Finally, even at the end of the third session Bradbury was never fully cooperative with Officer Cook because he never named Griffin as a shooter, claiming that a person named "Josh" did it. There is substantial evidence to support the trial court's determination that Officer Cook's isolated comment about sexual assault did not render Bradbury's statement involuntary.

Bradbury cites *Arizona v. Fulminante*, 499 U.S. 279 (1991), for the proposition that a threat of sexual assault in prison must be considered unduly coercive, but that case is factually distinguishable. In *Fulminante*, a prisoner confessed to a

fellow inmate, while in prison, that he had committed a murder, after the fellow inmate told the defendant that he could protect him from ongoing harassment by other inmates if the defendant told him the truth. In Bradbury's case, he was not in prison, was not subjected to harassment from inmates, and Officer Cook's remark, while troubling, did not imply immediate danger and was merely one statement in the course of a lengthy interrogation. The trial court did not abuse its discretion in admitting Bradbury's interrogation.

## 2. Jury Instruction

Bradbury claims the trial court failed to properly instruct the jury on the elements of the offense of murder. The State says Bradbury waived any error. We agree with the State.

Jury instructions are left to the sound discretion of the trial court, and we may not reverse unless the court abuses that discretion. *Davis v. State*, 892 N.E.2d 156 (Ind. Ct. App. 2008). A trial court abuses its discretion if a jury instruction misstates the law or otherwise misleads the jury. *Elliott v. State*, 786 N.E.2d 799 (Ind. Ct. App. 2003).

Bradbury claims that several instructions were erroneous, but he identifies only the instruction on the elements of murder. The instruction said:

> There were in force the following statutes of the State of Indiana:

> I.C. 35-42-1-1 Murder
> The crime of murder is defined by law as follows:

A person who knowingly or intentionally kills another human being commits murder, a felony.

I.C. 35-41-2-4 Aiding, inducing or causing

Aiding, inducing, or causing murder is defined by statute as follows:

A person who, knowingly or intentionally aids, induces or causes another person to commit an offense commits that offense. A person may be convicted of aiding, inducing or causing murder even if the other person has not been prosecuted for the murder, has not been convicted of the murder, or has been acquitted of the murder.

I.C. 35-41-2-2 Culpability

A person engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so.

A person engages in conduct knowingly if, when he engages in this conduct, he is aware of a high probability that he is doing so.

Appellant's App. Vol. 2, p. 179.

[19]     Bradbury's claim on appeal is that the instruction should have required his actual knowledge the handgun would be used to shoot. This Court has held otherwise. *See Boney v. State*, 880 N.E.2d 279 (Ind. Ct. App. 2008) (instruction not erroneous for failure to state specifically that defendant gave weapon to shooter with knowledge or intent it would be used to kill), *trans. denied*.

[20] In any event, we need not resolve the claim. Initially, Bradbury's counsel had no objection to the court's instruction. March 28-30 Tr. p. 180.[4] Later, after the State raised a challenge to it, Bradbury stated he had concerns and requested the chance to dictate his objections into the record after trial. March 31 Tr. p. 12. When the presentation of evidence ended, the court offered counsel an opportunity to dictate any objections, and he declined. *Id.* at 265. The issue is waived.[5]

### 3. Sufficiency of the Evidence - Murder

[21] Bradbury argues there is insufficient evidence to support his conviction for murder as an accomplice, saying the State failed to prove he intended for anyone to be killed. In reviewing a sufficiency claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Green v. State*, 937 N.E.2d 923 (Ind. Ct. App. 2010), *trans. denied*. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

[22] To convict Bradbury of murder as an accessory, the State was required to prove beyond a reasonable doubt that (1) Bradbury (2) knowingly or intentionally (3)

---

[4] The volumes of the transcript are not designated by number, so we cite to them by the date of the hearing.

[5] Bradbury also argues the prosecutor committed misconduct by claiming during opening and closing arguments, without evidentiary support, that Griffin was recruited by Bradbury or his companions to come to the park on April 9, 2014 because he was willing to kill. Bradbury did not object to the prosecutor's statements at trial, so the issue is not preserved. *See Lacy v. State*, 58 N.E.3d 944 (Ind. Ct. App. 2016) (claim of prosecutorial misconduct waived where defendant did not request admonishment or mistrial).

aided, induced, or caused (4) Griffin (5) to shoot J.S. Ind. Code §§ 35-42-1-1 (murder), 35-41-2-4 (aiding, inducing or causing an offense). Intent is a mental function, and, absent a confession, it often must be proved by circumstantial evidence. *Hightower v. State*, 866 N.E.2d 356 (Ind. Ct. App. 2007), *trans. denied*.

[23] The State was required to show more than Bradbury's mere presence at the scene of the shooting. *Wright v. State*, 690 N.E.2d 1098 (Ind. 1997). It had to establish that Bradbury's conduct before, during, and after the crimes, in addition to his presence, tended to show complicity and thus supported an inference of participation in the crimes. *Id.* In addition, Bradbury's murder conviction is based in part on the doctrine of transferred intent. If a person deliberately attempts to kill one person but in the process kills another, the intent to kill is transferred and he may be found guilty of murdering the person who *was* killed. *Williams v. State*, 690 N.E.2d 162 (Ind. 1997).

[24] Bradbury, L.B., and others were involved in a fistfight at a public park in South Bend on April 8, 2014. Bradbury later told a fellow inmate there was an ongoing dispute between his east side friends and people from the west side of town, including L.B. After the fight, the participants continued to discuss the dispute on social media.

[25] On April 9, 2014, Bradbury took a handgun and a rifle from the home of a friend, D.W., before gathering with companions at a house near the park. Griffin was present at the house near the park, although he had not been

involved in the fight the previous day. Griffin did not usually hang out with Bradbury and his friends.

[26] Bradbury gave the handgun to Griffin and the shotgun to another companion. D.W. recognized the guns as coming from his house. While the group was at the house near the park, a person from the west side of town came by and showed them a handgun, saying he brought it in case "anything got out of hand" at the park. March 28-30 Tr. p. 201. Griffin pulled out his own handgun, saying "it ain't going to happen like that." *Id.*

[27] Later, Bradbury and his associates went to the park. Bradbury's mother was looking for him and brought Joshua Hodge and Xavier Primm to the park to help. They found Bradbury with his companions, and Primm asked Bradbury to go to his mother's car. Bradbury refused.

[28] Next, Bradbury and company stopped L.B. as he was riding by on a bicycle. L.B. was informed that he would have to fight M.B. or Griffin. He chose M.B. because M.B. was unarmed, while Griffin had a handgun tucked in his pants. L.B. handed his phone to T.B., but T.B. threw it on the ground, breaking it. At that point, Griffin and T.B. pulled out their handguns and shot at L.B. as he fled, firing around fifteen shots. One of Griffin's shots killed J.S.

[29] After the shooting, everyone scattered. Bradbury, Hodge and Primm got into Bradbury's mother's car and left the scene. Later, when Bradbury, Hodge and others watched the news and saw that a two-year-old had been killed, Bradbury said, "It's my fault." March 28-30 Tr. p. 221.

[30] During the questioning that followed his arrest, Bradbury went to great lengths to avoid implicating Griffin. He lied to Officer Cook for hours by claiming that someone named "Ace," and later someone named "Josh," were the shooters. He later told a fellow inmate, "he did it, but he didn't mean to do it." *Id.* at 322. Bradbury further said, "if he would have never brought the guns over there it would have never happened." *Id.* He said he had been having problems with L.B.

[31] Later, Bradbury talked with a different inmate about the inmate's tattoo of a handgun. Bradbury said he was facing a case involving the same type of handgun, but no one would find the gun because "somebody got rid of it." *Id.* at 329. After the shooting, C.W. retrieved the gun Griffin had used and brought it to D.W. at the home of D.W.'s brother. The police later arrested C.W. and found shell casings from the gun on his person. They also retrieved the handgun from the home of D.W.'s brother, where it had been hidden in attic insulation.

[32] This is sufficient evidence from which the jury could have concluded beyond a reasonable doubt that Bradbury knowingly or intentionally aided, induced, or caused Griffin to shoot at L.B., striking and killing J.S. instead. Bradbury argues that he opposed the shooting, pointing to L.B.'s testimony that Bradbury shouted "don't shoot" immediately before Griffin shot at L.B. March 28-30 Tr. p. 140. One of Bradbury's fellow inmates testified that Bradbury had said his family was attempting to make a deal with L.B.'s family so that L.B. would

testify that he heard Bradbury shouting at his companions not to shoot during the confrontation. Bradbury's argument is a request to reweigh the evidence.

[33] Bradbury cites *Rosemond v. U.S.*, 134 S. Ct. 1240 (2014), in support of his claim, but that case is distinguishable. There, the Supreme Court was called upon to apply principles of accomplice liability to a federal statute barring use of a gun during a violent crime or drug dealing and to determine whether "aiding and abetting" liability applied only to the use of a gun or also to the predicate violent or drug-related offense. By contrast, this case presents a murder charge without a predicate offense.

[34] We affirm Bradbury's conviction for murder.

## 4. Sufficiency of the Evidence – Sentence Enhancement

[35] Bradbury argues the State failed to prove he was part of a gang. Our standard of review is the same as for reviewing the murder conviction: we consider only the probative evidence and reasonable inferences supporting the verdict. *Armstrong v. State*, 22 N.E.3d 629 (Ind. Ct. App. 2014), *trans. denied*.

[36] At the time of the incident in question, the governing statute, Indiana Code section 35-50-2-15 (2006), provided in relevant part:

> (b) The state may seek, on a page separate from the rest of a charging instrument, to have a person who allegedly committed a felony offense sentenced to an additional fixed term of imprisonment if the state can show beyond a reasonable doubt that the person knowingly or intentionally:
>
> (1) was a member of a criminal gang while committing the offense; and

(2) committed the felony offense at the direction of or in affiliation with a criminal gang.

[37] If the State makes that proof, the trial court must sentence the offender to an additional, non-suspendable term equal to the sentence for the underlying offense. *Id.* The Code provides guidance on possible evidence that might support a gang finding:

> (g) For purposes of subsection (c), evidence that a person was a member of a criminal gang or committed a felony at the direction of or in affiliation with a criminal gang may include expert testimony pursuant to the Indiana Rules of Evidence that may be admitted to prove that particular conduct, status, and customs are indicative of criminal gang activity. The expert testimony may include the following:
>
> (1) Characteristics of persons who are members of criminal gangs.
>
> (2) Descriptions of rivalries between criminal gangs.
>
> (3) Common practices and operations of criminal gangs.
>
> (4) Behavior of criminal gangs.
>
> (5) Terminology used by members of criminal gangs.
>
> (6) Codes of conduct, including criminal conduct, of particular criminal gangs.
>
> (7) Types of crimes that are likely to be committed by a particular criminal gang.[6]

---

[6] The General Assembly later amended the statute to replace all references to gangs with references to criminal organizations.

*Id.*

[38] Bradbury claims he was not a member of a criminal gang and did not act as an accomplice at the direction of or in affiliation with a gang. Several officers with the South Bend Police Department who were trained in organized crime testified they were aware of a gang called Evil Side that was based on South Bend's east side. According to the officers, Evil Side's members worked together to commit felonies. In addition, the members of the group used a specific hand gesture to indicate affiliation with Evil Side. The State submitted to the jury numerous photos of Bradbury's companions flashing the gesture.

[39] And, during the interrogation by Officer Cook, Bradbury admitted he affiliated with Evil Side. Bradbury also told a fellow inmate he was a member of Evil Side and that the April 9 shooting was the result of a dispute between Evil Side and a west side gang. Another witness who was present at the shooting, D.W., testified that he, Bradbury, and several other young men claimed affiliation with Evil Side, were loyal to each other, and would fight together if necessary. This is sufficient evidence from which the jury could have concluded beyond a reasonable doubt that Bradbury was a member of a criminal gang and participated in J.S.'s murder in affiliation with a criminal gang.

## 5. Treatment Under the Juvenile Code

[40] Bradbury argues the trial court should have imposed a juvenile sentence pursuant to Indiana Code section 31-30-4-2 (2013). At the time Bradbury committed his offense, that statute provided that when an offender under age

eighteen is convicted of a felony in criminal court: "The court may, upon its own motion, a motion of the prosecuting attorney, or a motion of the offender's legal representative, impose a sentence upon the conviction of the offender under this chapter" and may:

> (1) impose an appropriate criminal sentence on the offender under IC 35-50-2;
>
> (2) suspend the criminal sentence imposed, notwithstanding IC 35-50-2-2 and IC 35-50-2-2.1;
>
> (3) order the offender to be placed into the custody of the department of correction to be placed in the juvenile facility of the division of youth services . . . .

Indiana Code § 31-30-4-2.

[41] According to the plain language of the statute, the trial court "may" impose a juvenile sentence but is not obligated to do so. *Id.* As a result, a panel of this Court reviewed a trial court's rejection of juvenile sentencing under this statute pursuant to an abuse of discretion standard. *Legg v. State*, 22 N.E.3d 763 (Ind. Ct. App. 2014), *trans. denied*.

[42] In *Legg*, the trial court declined to impose juvenile sentencing upon a sixteen-year-old who murdered another juvenile, considering the defendant's juvenile history, his challenging childhood, and the nature of the offense. *Id.* Similarly, in the current case the trial court declined to impose juvenile sentencing, citing the heinous nature of the offense (including the victim's young age), Bradbury's juvenile record, the fact that he was on probation at the time of the offense, and his failure to benefit from several different juvenile justice rehabilitation

programs. Based on this record, we cannot conclude that the trial court's decision was an abuse of discretion.

## 6. Was Bradbury's Sentence Proportional?

Bradbury raises several statutory and constitutional challenges to his ninety-year sentence. We conclude that most of them do not warrant any relief and thus turn to the only one that does.

Bradbury claims his sentence amounts to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution and article I, section 16 of the Indiana Constitution because his sentence is disproportionate to his companions' sentences. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." Section 16 states, in relevant part, "Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense."

As Justice David recently reminded us, article I, section 16 requires reviewing not only whether a sentence is within statutory parameters, but also constitutional as applied to the particular defendant. *Shoun v. State*, 67 N.E.3d 635 (Ind. 2017). For penalties not based on prior offenses, a court must consider whether the penalty is "'graduated and proportioned to the nature of [the] offense.'" *Id.* at 641 (quoting *Knapp v. State*, 9 N.E.3d 1274, 1290 (Ind. 2014)). As Justice DeBruler once noted, while the nature and extent of penal sanctions are primarily legislative considerations, an appellant nevertheless has

a right to have the proportionality of his penalty reviewed under the Indiana Constitution. *Clark v. State*, 561 N.E.2d 759 (Ind. 1990). The protections of section 16 go beyond those contained in the Eighth Amendment, and vindicating those protections may on rare occasion require setting aside a sentence even when it is inside the statutory parameters. *Conner v. State*, 626 N.E.2d 803 (Ind. 1993).

[46] Bradbury, a juvenile, was convicted as an accessory of the murder of a two-year-old, who was the victim of a gang dispute. Bradbury had intended to kill another juvenile, L.B., and brought guns to the park to give to his companions. He had ample opportunity to avoid the confrontation but chose to persist. At the time Bradbury committed his crime, the advisory sentence for murder was fifty-five years, with a maximum sentence of sixty-five years and a minimum of forty-five. Ind. Code § 35-50-2-3 (2007). In addition, a person subject to a criminal organizations enhancement must receive "an additional fixed term of imprisonment equal to the sentence imposed for the underlying felony." Ind. Code § 35-50-2-15. The enhancement must be served consecutively to the underlying sentence and cannot be suspended. *Id.*

[47] Here, the trial court determined that it "would be well within [its] discretion to enter a sentence [of] at least the advisory 55 years." May 16, 2016, Tr. p. 346. Due to the sentencing enhancement, the court instead chose to impose the minimum sentence of forty-five years for murder, plus the mandatory, consecutive equal amount for the sentencing enhancement, for an aggregate of ninety years.

[48] Taking the *Shoun/Knapp/Conner* tests described above, we proceed to consider whether the penalty is "graduated and proportioned to the nature of the offense."

[49] To be sure, murder is the most serious offense of all, and the victim in this instance is the most innocent and unintended target. Still, the offenders as a group went to the park intending on homicide and bear responsibility for the outcome. Though Bradbury was not the shooter, he supplied weapons for the event, and the jury found that he intended the death of a fellow teenager, L.B. Based on these and other aggravating and mitigating factors, the trial judge observed that if the murder conviction were the only grounds for sentencing, the advisory sentence or a little more would be within reasonable discretion.

[50] The doubling of that sentence required by the gang enhancement sits on different grounds. That automatic doubling was the leading reason the judge elected to impose the minimum sentence for murder, declaring that she needed to look at the whole forest rather than at each individual tree. We think the judge was correct about that, but we also conclude that as with the automatic thirty-year addition in *Clark v. State*, the result is not proportionate to the nature of the offense.

[51] We thus conclude that the trial court's forty-five-year sentence for murder as an accomplice should stand, but direct that the gang enhancement be set at fifteen years.

# Conclusion

The trial court carefully considered the facts and circumstances of the case in imposing a sentence that is within statutory limits, but we conclude Bradbury's sentence is constitutionally disproportionate to the nature of the offense and his companions' culpability for J.S.'s death. We reverse his sentence and remand with instructions to resentence Bradbury for a total sentence of sixty years.

Affirmed in part, reversed in part, and remanded.

Riley, J., concurs.

Vaidik, C.J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

Tyre Mark Bradbury,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

Court of Appeals Case No.
71A05-1606-CR-1280

**Vaidik, Chief Judge, concurring in part, dissenting in part.**

[54]    I concur with the majority as to all issues except one.  That is, I disagree with the majority's conclusion that "Bradbury's [ninety-year] sentence is constitutionally disproportionate to the nature of the offense and his companions' culpability for J.S.'s death" and its decision to resentence him to sixty years.  Slip op. at 21.  Given the circumstances in this case, including that

a two-year-old child was killed and Bradbury's juvenile history, I would affirm Bradbury's ninety-year sentence.

Article 1, Section 16 of the Indiana Constitution provides in part: "All penalties shall be proportioned to the nature of the offense." Although "we cannot set aside a legislatively sanctioned penalty merely because it seems too severe," Article 1, Section 16 requires us to review whether a sentence is not only within statutory parameters but also constitutional as applied to the particular defendant. *Knapp v. State*, 9 N.E.3d 1274, 1290 (Ind. 2014) (quotation omitted). For penalties not based on prior offenses, the inquiry is whether the penalty is graduated and proportioned to the nature of the offense. *Id.* "Stated differently, a legislatively determined penalty will be deemed unconstitutional by reason of its length only if it is so severe and entirely out of proportion to the gravity of the offense committed as to shock public sentiment and violate the judgment of reasonable people." *Foreman v. State*, 865 N.E.2d 652, 655 (Ind. Ct. App. 2007) (quotation omitted), *reh'g denied*, *trans. denied*.

[55] Here, Bradbury, who was fifteen years old at the time of the offense and a member of a gang, intended to kill L.B., another juvenile, and brought guns to the park to give to his companions. Griffin and T.B. fired approximately fifteen shots that missed L.B., killing a two-year-old child instead. Bradbury was charged with two counts: murder and committing the offense of murder at the direction of or in affiliation with a criminal organization. Bradbury had a jury trial and was convicted of both counts. At sentencing, the trial court found the following aggravators: Bradbury's juvenile history, including that he was on

probation at the time of the offense and had tried every option that the juvenile system had to offer (including home detention with electronic monitoring and Boys School) with no success; Bradbury's ongoing substance abuse, including the "substantial use of marijuana" on the day of the offense; other children were playing in the yard with the two-year-old when he was shot; and the "ridiculous beef" that Bradbury had with L.B. that led to this tragedy. May 16, 2016 Tr. pp. 344-45. The court found two mitigators: Bradbury's age at the time of the offense and his difficult upbringing. It specifically rejected Bradbury's role as an accomplice as a mitigator in light of the jury's "specific finding" that Bradbury intended to kill L.B. *Id.* at 346. The court sentenced Bradbury to forty-five years for murder and then enhanced his sentence by forty-five years because of his membership in a criminal organization. *See* Ind. Code § 35-50-2-15 (explaining that the trial court "shall . . . sentence the person to an additional fixed term of imprisonment equal to the sentence imposed for the underlying felony . . . ."). Although the court considered imposing the advisory sentence for murder of fifty-five years, because of the mandatory sentencing enhancement it decided to impose the minimum sentence for murder of forty-five years, resulting in an aggregate sentence of ninety years. May 16, 2016 Tr. p. 346.

[56] I agree with the majority that the minimum sentence of forty-five years for murder is constitutionally proportionate in light of Bradbury's role in the crime. The issue then is whether Bradbury's forty-five-year criminal-organization sentencing enhancement is also constitutionally proportionate. I believe that it

is. Bradbury was convicted of the most serious offense, murder, and the victim was a two-year-old child. Although the child was not the intended victim, the jury found that Bradbury intended to kill another minor, L.B. In addition, Bradbury has two juvenile adjudications, one of which would have been a felony if committed by an adult. As the trial court explained, Bradbury had been on probation and "home detention with electronic monitoring," "detained at the . . . juvenile justice center," and "sent to Indiana Boys School at the department of correction"—none of which "have resulted in a change of behavior." *Id.* at 341. Given Bradbury's role in the tragic murder of the two-year-old child, I believe that his forty-five-year criminal-organization sentencing enhancement is graduated and proportioned to the underlying offense. *See Armstrong v. State*, 22 N.E.3d 629, 639 (Ind. Ct. App. 2014) (affirming sixty-five-year criminal-organization sentencing enhancement for sixty-five-year murder sentence because it was graduated and proportioned to the nature of the offense and "the circumstances surrounding the murder"), *trans. denied*; *cf. Clark v. State*, 561 N.E.2d 759, 766 (Ind. 1990) (finding that a thirty-year habitual-offender enhancement for operating while intoxicated was "not proportionate to [the] offense and therefore violate[d] Article [1], § 16 of the Indiana Constitution" because it was based on "conduct that the legislature has classified as a

misdemeanor" and there was "no injury to person or property"). Accordingly, I would affirm Bradbury's ninety-year sentence.[7]

---

[7] The majority notes that the actual shooters received shorter sentences than Bradbury. But the proportionality analysis requires us to look at whether the sentence is proportional to the nature of the offense, not to the sentences of any accomplices. In any event, Griffin, who fired the fatal shot, was not charged with the criminal-organization sentencing enhancement because he was not a member of a gang. May 16, 2016 Tr. p. 325. Griffin was convicted of murder and sentenced to sixty years. T.B., the other shooter, was charged with murder, attempted murder, and the criminal-organization sentencing enhancement. T.B. pled guilty to attempted murder, and the criminal-organization sentencing enhancement and murder charge were dismissed. He was then sentenced to forty years with five years suspended.